### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Coleman

    v.                                  Civil No. 10-cv-342-SM

Florida Bar et al.

### REPORT AND RECOMMENDATION

Before the court is Richard Coleman's complaint (doc. no. 1), which includes attached exhibits.  See Fed. R. Civ. P. 10(c) (exhibits attached to pleading are part of pleading for all purposes).  Because Coleman is proceeding both pro se and in forma pauperis, the matter is before the court for preliminary review.  See 28 U.S.C. § 1915(e)(2); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1).

### Standard of Review

Under this court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the magistrate judge conducts a preliminary review.  LR 4.3(d)(1).  Pro se pleadings are construed liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375,

381 (2003).  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See id. (citing 28 U.S.C. § 1915(e)(2) & Fed. R. Civ. P. 12(b)(1)).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, No. 09-2207, 2011 WL 1228768, *9 (1st Cir. Apr. 1, 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of

2

little more than "allegations that merely parrot the elements of
the cause of action" may be dismissed.  Ocasio-Hernández, 2011
WL 1228768 at *9.  The second part of the test requires the
court to credit as true all non-conclusory factual allegations
and the reasonable inferences drawn from those allegations, to
determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).
The "make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of
Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at
555 ("Factual allegations must be enough to raise a right to
relief above the speculative level, on the assumption that all
the allegations in the complaint are true (even if doubtful in
fact)." (citations and footnote omitted)).  Evaluating the
plausibility of a claim is a "context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense."  Iqbal, ___ U.S. at ___, 129 S. Ct. at 1950
(citation omitted).  In doing so, the court may not disregard
properly pleaded factual allegations or "attempt to forecast a

plaintiff's likelihood of success on the merits." Ocasio-Hernández, 2011 WL 1228768 at *9.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

**Background**

The claims here arise out of events occurring in Florida between prior to 2006, while Coleman, currently a New Hampshire resident, lived in Florida.  The claims relate to Florida attorney Jeffrey Blau's representation of Coleman in litigation in that state, Coleman's subsequent dissatisfaction with Blau, and the processing of an attorney disciplinary complaint and malpractice case Coleman filed in Florida against Attorney Blau. Defendants are Attorney Blau; Judge Sam D. Pendino, a Florida state court judge; Attorney Henry Paul, Florida Bar Assistant Staff Counsel; and the Florida Bar, a professional organization of lawyers in Florida organized by the Florida Supreme Court.

A.   Blau's Representation of Coleman

1.   Brandon Academy

In August 2002, Coleman contacted Blau to request his representation in a lawsuit against Brandon Academy, a private school in Florida where Coleman's son had been a student.

Coleman instructed Blau that he wanted the school, its
headmistress, and other school personnel to be named as
defendants.  In June 2003, Coleman signed a retainer agreement
and tendered half of the retainer to Bruce Helmich, a paralegal
in Blau's office that Coleman believed to be a lawyer.  On
January 29, 2004, Blau filed a complaint against the school, but
omitted the headmistress as a defendant.

In February 2004, Blau received a letter from Attorney
Clifton Curry, a Florida attorney known to Blau, informing Blau
that Curry's wife was the school's headmistress, and that Blau
should voluntarily dismiss the case or risk sanctions for filing
a frivolous action.  On May 18, 2004, Blau sent a letter to
Coleman informing him that he intended to withdraw as "lead
counsel," having learned that his friend Attorney Curry was the
headmistress's husband.  Blau requested that Coleman sign a
stipulation replacing Blau with Attorney Anthony Ekonomides, who
would "be working this case out of [Blau's] office."  On May 27,
2004, Coleman signed the agreement, substituting Attorney
Ekonomides for Blau as lead counsel.  In July 2004, Coleman met
with Attorney Ekonomides, who told Coleman that he had not
agreed to represent Coleman and would require a case summary
before he could do so.

No notice of a substitution of counsel appears to have been filed in the case against the school defendants, as on July 20, 2005, Blau and the school defendants entered into a stipulation of dismissal without prejudice.  The state court entered the stipulation as an order on July 22, 2005.  In an August 8, 2005, phone call memorialized in a letter dated August 11, 2005, counsel for the school defendants told Coleman that the lawsuit against the school defendants had been dismissed without prejudice.  Coleman, in that August 8 phone call, told the school defendants' counsel that he had fired Blau and was representing himself and his son personally in the matter.

    2.  Florida Group Residential Homes

Sometime prior to September 4, 2004, Blau also agreed to represent Coleman in a lawsuit to be filed against Florida Residential Group Homes for fraud and wrongful termination. Coleman drafted a complaint for Blau's use, which named Manuel Mira as a defendant.  In providing the draft complaint to Blau, and in subsequent communications with Blau's office, Coleman insisted that "Mira be named a Defendant, and that the Statute of Limitations on Mira was imminent."  Compl. (doc. no. 1) at 15.  Without informing Coleman, Blau did not amend the complaint

as directed.  Coleman believes that his claims against Mira are now barred by the statute of limitations.

B.  Malpractice Case

On September 4, 2004, Coleman sent a letter to Blau challenging the decision not to name Manuel Mira in the Florida Group Homes complaint.  Receiving no response to that letter, Coleman sent a follow-up letter to Blau demanding damages for malpractice, dated December 5, 2004, asserting Blau's liability with respect to the case against the school defendants and the case against Florida Residential Group Homes.

In 2006, Coleman filed a malpractice lawsuit against Blau in the Circuit Court in Hillsborough County, Florida, see Coleman v. Blau, No. 06-CA-000380 (Fla. Cir. Ct.) (complaint filed Jan. 17, 2006).  That case remains pending, and Judge Sam Pendino has been assigned to the matter.

Coleman considers certain actions and rulings of Judge Pendino, to be improper, biased, unethical, and otherwise objectionable.  In July 2009, Coleman filed a motion to disqualify Judge Pendino, and also filed a disciplinary complaint against Judge Pendino with the Florida Bar.  The Florida Bar construed Coleman's disciplinary complaint as a

letter asserting a disagreement over the judge's rulings, and denied jurisdiction over the matter.

C.   Blau's Disciplinary History

On September 23, 2005, Coleman filed a disciplinary complaint with the Florida Bar against Blau, asserting, among other things, that Blau was negligent in representing Coleman against the school defendants and Florida Group Homes, and that Blau's paralegal, Bruce Helmich, had practiced law without a license.  On December 28, 2005, Coleman received a response regarding his complaint from Attorney Henry Paul, Florida Bar Assistant Staff Counsel, stating that the Florida Bar found insufficient evidence of any violations to warrant further investigation or proceedings.  See Ex. Q to Compl.

Coleman sent a letter to the Florida Bar on March 28, 2006, stating that Attorneys Blau and Curry were often seen together in Attorney Curry's office prior to Blau representing Coleman. In a reply letter, dated April 7, 2006, Attorney Paul stated that the information regarding the attorneys' meetings did not alter the Florida Bar's findings, and that the disciplinary complaint file did not need to be reopened.  See Ex. R to Compl.

At some point, Coleman learned that Blau had a history of drug abuse, mental health issues, and ethical violations that

had resulted in his being suspended from the practice of law in Florida in both 1994 and 2008.  In 1994, the Florida Supreme Court, citing Blau's drug and mental health problems, suspended Blau for sixty days, followed by three years' probation, including substance abuse evaluation and treatment.  See Fla. Bar v. Blau, 630 So. 2d 1085, 1085 (Fla. 1994).  A court-appointed referee recommended the sanction imposed, and the Florida Bar concurred in the recommendation.  Id.

Almost fifteen years later, in 2008, more than one year after Blau's December 2006 arrest for drug possession, the Florida Bar filed a second disciplinary action against Blau, charging him with violations of the rules of professional conduct, relating to his abuse of drugs.  Attorney Paul appeared in that proceeding in the state supreme court on the Florida Bar's behalf.  In September 2008, the Florida Supreme Court suspended Blau from the practice of law in Florida for thirty days, followed by a three-year probation period.  See Fla. Bar v. Blau, No. SC08-435 (Fla. Sept. 11, 2008) (order imposing sentence of suspension and probation).

D.   Claims

Citing 42 U.S.C. § 1983 and the common law, Coleman has asserted the following claims in the Complaint (doc. no. 1) [1]:

1.   Judge Pendino violated Coleman's federal constitutional rights to equal protection and due process with respect to the malpractice case against Blau.

2.   Coleman suffered a violation of his right to equal protection during a hearing held on May 18, 2009, in the malpractice action when a female court deputy harassed and intimidated Coleman.

3.   Coleman suffered a violation of his federal constitutional rights to due process and equal protection when the Florida Bar and Attorney Paul (hereinafter "Bar defendants"), together with Blau, conspired to conceal facts regarding Blau's history of mental illness and substance abuse, in issuing Blau a license to practice law in Florida and in failing to seek to revoke that license thereafter.

4.   The Bar defendants engaged in fraud and a conspiracy to commit fraud with Blau, in issuing a license to Blau and in not seeking to revoke that license thereafter.

5.   The Bar defendants' negligence in failing to supervise and monitor Blau by not seeking to revoke his license to practice law caused Coleman to suffer harm.

6.   Blau engaged in fraud and legal malpractice with respect to Coleman, which caused Coleman to suffer harm.

---

[1]The identification of claims herein will be considered to be the claims raised in the complaint (doc. no. 1) for all purposes in this case.  If Coleman disagrees with this identification of the claims, he must timely file an objection to this report and recommendation or properly move to amend the complaint.

**Discussion**

I.   <u>Eleventh Amendment</u>

Claims for damages cannot be maintained in federal court against unconsenting states and their agencies and officers, absent Congressional abrogation of the State's sovereign immunity.  See <u>Fantini v. Salem State College</u>, 557 F.3d 22, 33 (1st Cir. 2009); <u>see also</u> <u>P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993).  Judge Pendino in his official capacity is a state officer, and the Florida Bar is a state agency for Eleventh Amendment purposes.  See <u>Kaimowitz v. Fla. Bar</u>, 996 F.2d 1151, 1155 (11th Cir. 1993).  Neither a waiver of sovereign immunity nor any Congressional abrogation of that immunity exists as to the claims asserted here based on state law and 42 U.S.C. § 1983.  See <u>id.</u> (court lacked subject matter jurisdiction to adjudicate claim that Florida Bar violated plaintiff's right to equal protection).  Accordingly, the Court should dismiss the claims for damages asserted under section 1983 and state law against the Florida Bar and Judge Pendino in his official capacity.

II.   <u>Judge Pendino</u>

Absolute judicial immunity protects judges from "civil liability for any normal and routine judicial act," except those

11

taken in the "clear absence of all jurisdiction." Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (citing Stump v. Sparkman, 435 U.S. 349, 357 (1978)).  "This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." Cok, 876 F.2d at 2.  Judges are likewise immune from suit for claims that the judge's act was the product of a corrupt conspiracy involving other parties or lawyers.  See id. at 3; see also Dennis v. Sparks, 449 U.S. 24, 27-29 (1980).

The Florida court at issue, the Circuit Court in Hillsborough County, is a court of general jurisdiction.  See Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 895 (Fla. 2003).  All of Coleman's claims against Judge Pendino concern routine judicial acts and decisions issued within the scope of the court's jurisdiction over the malpractice case against Blau. Whether or not the cited acts and decisions may manifest bias, error, or an abuse of discretion, none of the cited acts exceeded the court's jurisdiction over the case.  See Cok, 876 F.2d at 2 (judicial immunity applies "no matter how erroneous the act . . . , how injurious its consequences, how informal the proceeding, or how malicious the motive").  Judges are absolutely immune from claims for damages arising from such

12

judicial acts.  Accordingly, the claims against Judge Pendino should be dismissed.

III. <u>Courtroom Deputy's Harassment of Coleman</u>

Coleman has asserted that an unnamed, armed courtroom deputy treated him differently than the deputy treated Blau and Bruce Helmlich during a hearing in May 2009, and that her harassment and intimidation of Coleman violated his right to equal protection.  Specifically, Coleman asserts that the court officer harassed Coleman by standing next to him, interrupting him to tell him not to click his pen, and denying him permission to leave for the bathroom during a single hearing in the case.

In order to establish an equal protection violation, a plaintiff must

> adduce sufficient evidence from which a rational jury
> reasonably could conclude that, compared with others
> similarly situated, he was selectively treated . . . based
> on impermissible considerations such as race, religion,
> intent to inhibit or punish the exercise of constitutional
> rights, or malicious or bad faith intent to injure a
> person.

<u>Tapalian v. Tusino</u>, 377 F.3d 1, 5 (1st Cir. 2004) (internal citations omitted).  Coleman has not identified himself as a member of a class of people that would be protected by the Equal Protection Clause, as he has not stated that he possesses any characteristic which would subject him to discrimination on an

13

impermissible basis.  While Coleman noted that the deputy was a
woman, he has not specifically alleged that any similarly
situated woman received preferential treatment by the deputy or
that there was any reason to believe that the alleged harassment
was undertaken because he was a man.  In fact, Coleman states he
was treated differently than Blau and Helmich, other men.
Therefore, the claim at issue is not gender-based
discrimination.

The court therefore construes the equal protection claim as
a "class of one" claim, alleging that the court officer acted
with malice or bad faith towards Coleman, and not his
affiliation or identification with any group, in subjecting him
to differential treatment.  Ahmed v. Rosenblatt, 118 F.3d 886,
890 (1st Cir. 1997) ("court may intuit the correct cause of
action, even if it was imperfectly pled").  "A claim for a
'class of one' equal protection violation 'is cognizable when –
and only when – a 'plaintiff alleges that she [or he] has been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in
treatment.'"  See SBT Holdings, LLC v. Town of Westminster, 547
F.3d 28, 34 (1st Cir. 2008).  The test for whether persons are
similarly situated is "whether a prudent person, looking

objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result." Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001).  To allege a claim based on malicious intent or bad faith of a government official, a plaintiff normally "must establish more than that the government official's actions were simply arbitrary or erroneous; instead the plaintiff must establish that the defendant's actions constituted a 'gross abuse of power.'"  Tapalian, 377 F.3d at 6 (citations omitted).

Here, Coleman has pointed to no facts that would suggest that Blau, Helmich, and Coleman were similarly situated in relevant respects, or that the deputy acted with any improper motive in committing the allegedly harassing acts.  There are no facts from which the court might reasonably infer that Blau or Helmich engaged in behavior analogous to Coleman in all relevant respects.

Additionally, the complaint (doc. no. 1) is devoid of any suggestion of malice or bad faith on the deputy's part, much less that Coleman was subjected to any gross abuse of power by

the deputy.  See id.  Accordingly, the equal protection claim asserting discriminatory treatment by an unnamed courtroom deputy should be dismissed for failing to state a cognizable equal protection claim.[2]

IV.  Attorney Paul

Coleman claims that Attorney Paul violated his due process and equal protection rights and engaged in fraud and negligence by issuing a Florida Bar license to Blau prior to 1994, not revoking that license after receiving Coleman's September 2005 disciplinary complaint, and not revoking that license after Blau's December 2006 arrest and 2008 suspension from the practice of law.  Coleman points to Blau's criminal record, history of mental illness or substance abuse, ethical lapses, and disciplinary charges, as reasons why Blau should not have

---

[2]Coleman has not specifically asserted a substantive due process claim involving the courtroom deputy's conduct.  Nor could he, as a cognizable substantive due process claim requires allegations that "shock the conscience."  Martinez v. Cui, 608 F.3d 54, 64 (1st Cir. 2010).  The acts at issue here do not approach that level of misconduct.  See, e.g., Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623-24 (1st Cir. 2000) (allegations that police officers harassed plaintiffs for months, threatened harm, and pushed a pregnant plaintiff who miscarried two days later, were not conscience shocking); see also Cummings v. McIntire, 271 F.3d 341, 343 (1st Cir. 2001) (police officer's swearing at and shoving pedestrian resulting in severe injury did not "shock the conscience").

been licensed or should have suffered revocation of that
license.

The Florida Supreme Court has the power to license lawyers
to practice in Florida, and to revoke the license of any lawyer
admitted to practice in Florida whose unfitness to practice has
been established.  See Fla. Bar v. Weisser, 721 So. 2d 1142,
1144 (Fla. 1998); see also Fla. Const. Art. V, § 15 ("The
supreme court shall have exclusive jurisdiction to regulate the
admission of persons to the practice of law and the discipline
of persons admitted."); Fla. Stat. Ann. Bar R. 3-1.2.  The
Florida Supreme Court has delegated to the Florida Board of Bar
Examiners the authority to evaluate candidates for admission, In
re Fla. Bd. of Bar Examiners, 353 So. 2d 98, 100 (Fla. 1977),
and has delegated to the Florida Bar the task of screening and
ferreting out facts regarding a lawyer's fitness to continue to
practice.  Fla. Bar v. McCain, 330 So. 2d 712, 714 (Fla. 1976).
See also Ippolito v. Fla., 824 F. Supp. 1562, 1571 (M.D. Fla.
1993).  The Board of Bar Examiners ("BBE") and the Florida Bar
are separate entities performing functions on behalf of the
Florida Supreme Court.  See Fla. Stat. Ann. Sup. Ct. R. Admiss.
To Bar 1-13 (BBE is administrative agency of Florida Supreme
Court); Fla. Stat. Ann. Fla. St. Bar R. 3-3.1 to -3.3 (Florida

Supreme Court designates as agency of that court Florida Bar
Board of Governors, charging it with responsibility to
investigate disciplinary charges and authorizing it to employ
bar counsel to perform such duties).  As Blau's initial
licensure was the responsibility of the Florida Supreme Court
and the BBE, and not Attorney Paul's responsibility as counsel
for the Florida Bar, Blau has failed to state any claim upon
which relief can be granted against Attorney Paul for Blau's
initial licensure.

As to Attorney Paul's failure to take steps to pursue
disciplinary charges against Blau thereafter, Coleman lacks
standing to assert such claims.  Coleman's claims are analogous
to those of a victim of a crime, who lacks standing to assert a
claim based on the failure of the government to prosecute the
perpetrator.  See Linda R.S. v. Richard D., 410 U.S. 614, 619
(1973) ("private citizen lacks a judicially cognizable interest
in the prosecution or nonprosecution of another").  The Middle
District of Florida, confronting a claim brought by a plaintiff
seeking an order compelling the Florida Bar to pursue a
disciplinary action against an attorney stated the following:

> The purpose of an attorney disciplinary proceeding is
> to protect the public, not to vindicate private
> rights.  Therefore, "[n]o private rights except those
> of the accused attorney are involved."  "The role of

> the complaining witness in a bar disciplinary
> proceeding . . . is somewhat analogous to that of the
> victim in a criminal proceeding and, like crime
> victims, complaining witnesses cannot demand that the
> prosecuting authority file criminal charges against a
> particular individual based on alleged criminal
> behavior."  Accordingly, [plaintiff] has no ability to
> compel disciplinary action against the . . . lawyer.

Brown v. Fla. Bar, No. 2:08-cv-308-FtM-29SPC, 2009 WL 1513999,

at *3 (M.D. Fla. May 29, 2009) (citations omitted).  The court

concluded that the plaintiff lacked standing to assert a claim

seeking to compel the Florida Bar to institute a disciplinary

action against the lawyer in question.  Id.  By the same token,

the court here should dismiss for lack of standing the claims

for damages filed by Coleman against Attorney Paul challenging

the Florida Bar's failure to seek revocation of Blau's license.

V.   Section 1983 Claims against Blau

     Under section 1983, a person alleging that a state actor

has violated his or her federal rights has a cause of action for

damages.  See 42 U.S.C. § 1983.  The United States Constitution

"erects no shield against merely private conduct, however . . .

wrongful."  Blum v. Yarketsky, 457 U.S. 991, 1002 (1981).  A

private person can be held susceptible to suit under section

1983 in only three circumstances:  (1) if there is an elaborate

financial or regulatory nexus between the private person and the

government, compelling the private person's conduct; (2) if the
private person has assumed a traditionally public function; or
(3) if the government and the private person are involved in a
symbiotic relationship involving the sharing of profits.  See
Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002); see also
Blum, 457 U.S. at 1004.

Blau is a private person and not a state actor.  Coleman
alleges that Blau is liable under section 1983, however, because
he acted in concert with state actors, including Judge Pendino
and the Bar defendants.  His allegations of joint action with
the judge rest upon speculative, conclusory allegations of
fraud, and a conspiracy to protect Blau that led to the judge
scolding Coleman, scheduling hearings on dates favorable to
Blau, erring, ruling in favor of Blau, and electing to hear a
motion to disqualify himself.

Although "pro se complaints are to be read generously,
allegations of conspiracy must nevertheless be supported by
material facts, not merely conclusory statements."  Slotnick v.
Garfinkle, 632 F.2d 163, 165 (1st Cir. 1980) (per curiam)
(citation omitted); see also Iqbal, ___ U.S. at ___, 129 S. Ct.
at 1951 (conclusory nature of allegations not entitled to
presumption of truth).  Stripped of the conclusory charges of

fraud and a conspiracy between a judge and an attorney who is a
defendant in a malpractice action, Coleman's complaint lacks
sufficient allegations to state a plausible claim of private
party liability under section 1983.  Accordingly, Coleman has
failed to state a cognizable section 1983 claim against Attorney
Blau relating to Judge Pendino's conduct.

Coleman's allegation of a conspiracy between Blau and the
Bar defendants is similarly conclusory.  Coleman asserts that
the Bar defendants, driven to protect a Florida attorney, and
acting in concert with Blau, failed to properly supervise and
seek appropriate sanctions against him, and that this joint
action provides a basis for holding Blau liable under section
1983.  As the allegations of a conspiracy are conclusory, they
are not entitled to a presumption of truth.  Stripped of the
conclusory allegations, the facts asserted do not state a
plausible claim for a private attorney's liability under section
1983 for the Bar's conduct.  Accordingly, Coleman's section 1983
claims against Blau should be dismissed.

VI.  <u>State Law Claims against Blau</u>

The remaining claims in this case are asserted against Blau
under state law theories of fraud, negligence, and legal
malpractice.  The claims at issue generally assert that Blau's

incompetent representation of Coleman caused Coleman to suffer monetary losses, a loss of advantage in his state court litigation, the running of the statute of limitations on the claim against Mira, and emotional distress with physical symptoms.  The court has diversity jurisdiction over these claims, as the parties are entirely diverse in citizenship and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332.

In a diversity case, the court applies the choice of law rules of the forum state to determine which statute of limitations applies.  See Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 46 (1st Cir. 2009).  In this case, the court need not resolve the question of choice of law, as under either Florida or New Hampshire law, the claims at issue are time-barred.

New Hampshire's statute of limitations is three years for claims of fraud and legal malpractice.  See N.H. Rev. Stat. Ann. § 508:4; Feddersen v. Garvey, 427 F.3d 108, 112-13 (1st Cir. 2005).  Malpractice claims under New Hampshire law accrue when the plaintiff knew or had reason to know that he suffered some harm caused by the attorney's conduct; the full extent of the harm need not be apparent for the claim to accrue.  See Feddersen, 427 F.3d at 113.

Florida's statute of limitations is two years for claims of legal malpractice and four years for fraud.  See Fla. Stat. Ann. § 95.11.  The statute of limitations for professional malpractice runs from the time when "the cause of action is discovered or should have been discovered with the exercise of due diligence."  Id. § 95.11(4).

Coleman filed this federal case in August 2010, more than four years after he filed his state court case against Blau in January 2006.  The allegations in the complaint and the documents filed as attachments to the complaint indicate that Coleman knew or had reason to know that Blau's representation of him caused him harm no later than January 2006.  Accordingly, the claims at issue are time-barred and should be dismissed.[3]

### Conclusion

For the foregoing reasons, the court should dismiss all claims asserted in this case.  Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to

---

[3]Given that all claims should be dismissed for reasons stated in this report and recommendation, the court need not address whether dismissal would also be appropriate for lack of proper venue or personal jurisdiction over the Florida-based defendants.

appeal the district court's order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).


_____
Landya B. McCafferty
United States Magistrate Judge

Date:  May 2, 2011

cc:  Richard Coleman, pro se
     Jeffrey A. Blau, pro se


LBM:nmd